**Fred PETERSON, Plaintiff,**

v.

**Charles J. SCULLY, etc., et al., Defendants.**

**No. 86 Civ. 234 (WCC).**

United States District Court, S.D. New York.

March 10, 1989.

Fred Peterson, Napanoch, N.Y., pro se.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, for defendants; Caren S. Brutten, Asst. Atty. Gen., of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

### BACKGROUND

Plaintiff Fred Peterson ("Peterson"), an inmate at Eastern New York Correctional Facility, formerly an inmate at Green Haven Correctional Facility ("Green Haven"), brings this action, pro se, pursuant to 42 U.S.C. § 1983, against Charles J. Scully, Superintendent of Green Haven, Thomas A. Coughlin III, Commissioner of Correction, and various employees of Green Haven. Plaintiff's complaint raises two discrete claims. First, plaintiff contends that he was denied proper medical attention by the medical staff at Green Haven. Second, plaintiff maintains that he was assaulted by officers at a Tier III hearing held on February 1, 1985. The action is currently before the Court on defendants' motion to dismiss the complaint, pursuant to Rule 12(b)(6), Fed.R.Civ.P. For the reasons articulated below, defendants' motion is granted in part and denied in part.

### DISCUSSION

I. Plaintiff's Claims

  A. *Plaintiff's Claim for Inadequate Medical Attention*

■ Plaintiff alleges a violation of his civil rights by being denied medication for gout, bursitis, gas feedback, and arthritis by doctors and nurses at Green Haven. Additionally, plaintiff alleges that he was refused a soft diet when he arrived at Green Haven despite the fact that he was deprived of food during the last part of his incarceration at Attica. Finally, plaintiff declares that he waited three months before receiving lotion to relieve itching caused by dry skin. The complaint does not expressly state which provision of the constitution defendants infringed by their alleged mistreatment of Peterson. However, in accordance with the rule that pro se documents be liberally construed, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Court treats the complaint as presenting a claim that by depriving plaintiff of medication and lotion, and refusing to place him on a soft diet, defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment.

The standard for establishing a § 1983 case under the Eighth Amendment has been succinctly stated by the Supreme Court: "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Negligence on the part of a physician is not enough. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.*

In *Estelle*, the prisoner was seen by medical personnel on 17 occasions over a three-month period after complaining of, among other things, a back ailment. Defendant claimed that he received inadequate diagnosis and treatment, because the doctors treated his back with bed rest, muscle relaxants, and pain relievers, instead of taking x-rays and utilizing other diagnostic techniques. The Supreme Court, reversing the Court of Appeals, found no constitutional violation.

The facts in the case now before the Court are similar to those in *Estelle*. In the current case, plaintiff acknowledges that he was seen by medical personnel approximately 30 times between November 26, 1984, and February 8, 1985, the period during which he alleges his rights were infringed. Plaintiff's Brief at 2; Defendants' Affidavit, Exh. 1. Plaintiff also admits that within approximately one week after he arrived at Green Haven, he was taken to the prison hospital, where Dr. Tambar attempted to examine him and administer a blood test. Plaintiff refused to allow Dr. Tambar to examine him or draw

blood, despite the fact that the medical personnel at Green Haven were now responsible for deciding whether the treatment Peterson demanded, the prescription of certain pills, creams, or a soft diet, was warranted. Complaint ¶ 45. In addition, the medical records contain several instances where plaintiff was verbally abusive to medical personnel who were assisting him. Defendants' Affidavit, Exh. 1.

Taking all of plaintiff's allegations as true, *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and giving them a liberal construction, it appears that plaintiff was uncooperative with the medical personnel at Green Haven and insisted on dictating his own course of treatment. The gravamen of plaintiff's case is that the medical personnel at Green Haven did not prescribe the same medication he had been taking while at Attica. "It is established that claims of inadequate medical treatment which reflect a mere disagreement with prison authorities over proper medical treatment do not state a claim of constitutional magnitude." *Massey v. Hutto*, 545 F.2d 45 (8th Cir.1976). With respect to plaintiff's request for a soft diet, he does not allege that he suffered any injury resulting from maintaining a regular diet at Green Haven. Moreover, a decision regarding the type of diet an inmate maintains falls well within the discretion of the prison's medical personnel. Finally, a three-month delay in receiving lotion for dry skin cannot provide the basis for a § 1983 claim.

The complaint and the medical records flatly refute any suggestion that the medical personnel at Green Haven ignored or abused Peterson, or manifested "deliberate indifference" toward him. Consequently, the Court is compelled to find that, with respect to Peterson's medical treatment, the complaint fails to state a claim upon which relief can be granted. *See Harding v. Kuhlmann*, 588 F.Supp. 1315 (S.D.N.Y. 1984) (Weinfeld, J.), *aff'd*, 762 F.2d 990 (2d Cir.1985).

### B. *Plaintiff's Claim for Assault*

Plaintiff, in his "Affidavit in Response to Defendants' Motion to Dismiss," alleges that he was assaulted by corrections officers, at the order of Deputy Seitz, during and after a Tier III hearing on February 1, 1985. According to plaintiff, although prisoners were required to sit with their hands in their pockets during hearings, Deputy Seitz had allowed him to remain standing at a previous hearing because of his arthritis. Despite the fact that Deputy Seitz was aware of plaintiff's arthritis and had exhibited leniency in the past, plaintiff alleges, Deputy Seitz would not allow plaintiff to stand at the February 1 hearing. Instead, according to plaintiff, Deputy Seitz ordered corrections officers to twist his arms and legs and kneel in his back, tearing tendons and ligaments in his knees, arm, shoulder and back. Plaintiff maintains that he exhibited no aggression to provoke such an attack.

In his complaint, plaintiff did not allege that he suffered any of these severe injuries. It was only after defendants' brief pointed out that the complaint alleged "pain," and not lasting injury, that plaintiff claimed such injuries in his "Affidavit." However, keeping in mind the Court's responsibility to pro se litigants, the Court will treat these alleged injuries as part of plaintiff's complaint.

Although the Court is skeptical, based on the information before it, that plaintiff actually suffered the injuries he alleges, and might be inclined to grant a motion for summary judgment if plaintiff, after having the opportunity to provide affidavits supporting his claim, failed to do so, a motion to dismiss compels the application of a different standard. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. at 236, 94 S.Ct. at 1686. Certainly if the facts are as plaintiff alleges, and he was beaten without provocation and suffered torn ligaments and tendons as a result, such abuse "shocks the conscience" and would sustain a § 1983 claim. *See Martinez v. Rosado*, 614 F.2d 829 (2d Cir.1980); *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.1973), *cert.*

*denied sub nom. Employee–Officer John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

Construing this pro se plaintiff's papers in a liberal light, accepting the truth of his allegations, and drawing inferences in his favor, as the Court is required to do, I conclude that plaintiff makes out a claim sufficient to defeat defendants' motion to dismiss under Rule 12(b)(6).

II. The Claims Against Defendants Scully and Coughlin

■ Defendants move to dismiss the complaint against Charles J. Scully and Coughlin, on the ground that plaintiff has not claimed that either individual played a role in causing his alleged harm.

"In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). "[W]hen monetary damages are sought under § 1983, the general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required." *Johnson v. Glick,* 481 F.2d at 1034. The bare fact that an official occupies a position of authority is an insufficient basis for the imposition of personal liability. *McKinnon,* 568 F.2d at 934.

Plaintiff has not alleged any acts or omissions on the part of either Scully or Coughlin which contributed to his alleged injuries. Therefore, they cannot be held responsible for any deprivation of plaintiff's constitutional rights under § 1983. Accordingly, the complaint against them is dismissed.

## CONCLUSION

For the reasons set forth in the opinion above, defendants' motion to dismiss is granted in part and denied in part.

SO ORDERED.